I'm hoping to convince the court that the judge's ruling in this case was an unreasonable insistence upon expeditiousness in the face of a justifiable request for a very brief delay, a very brief delay, and that his ruling violated my client's right to counsel of choice. His ruling was inconsistent with Wheat, which was the prevailing precedent at the time, with Gonzalez-Lopez, and with this Court's recent decision in Bradley, the concurring opinion particularly, which focused on the time delay. But in Bradley there was no, wasn't the central fact in Bradley that there was no delay? Well, the Court wrote extensively in the concurring opinion about the only possible, the judge's fear of delay. The counsel in Bradley, I think the private counsel tried to substitute in 46 days before trial, but there had been a lot of delays before. But there was an assurance that there would be no delay. That was the premise of the request, that he assured, he said that he was not asking for a continuance. Yes, and the Court was afraid there would be a delay. In our case, we're talking about an actual delay that probably would have been about four days, because there were two juries. My point is that the Court made no inquiry to try to balance the needs to control the calendar with my client's rights. No comment was ever made about his right to counsel of choice. He could have inquired. A material witness? Yes, there was a material witness, which the Court apparently, without any inquiry, took the prosecution's word for the fact that they were concerned about this witness, but they didn't put this witness on until August 4th. And the trial itself started, the first witness in the case was called on, I think, July 26th, the same day that the attorney would have been ready. Evidence didn't even start to be presented until that date, and they held off several more days before they put this witness on. Well, yeah, but presumably they had some plan for the order in which they wanted to present things, and I assume the logical assumption is that he would have been put on six days into the trial whenever the trial began. Yes, Your Honor, but I would think that the order in which they chose to present their witnesses would necessarily trump my client's right to have counsel of choice. I mean, I think that the Court could have done a lot to control the situation, like picking the other defendant's jury first. Well, that's all probably true, and if we were looking at this head-on, we might, in a federal case, for example, we might reverse it, but we have an edpa issue here. So how does that play in? Well, he still has federal constitutional rights, even though he's in state court. Well, I understand that, but the question is whether, you know, given the fact that there was a delay and that there was some reason for concern about the material witness, could we say that it was an unreasonable application of the standard? Yes, I do, Your Honor. I think it's under all the cases, and I think Morris v. Slaffy, which is relied upon in Respondent's Brief, I mean, we're talking about a public defender situation. They were not talking about a counsel of choice case, and I don't see that it would matter whether it was in a federal court or state court. He still has a right, which is being abrogated, to have his own retained counsel. He's a 15-year-old boy facing a special circumstance murder. The attorney comes on from the prelim who is familiar with the case and asks for 11 days, six court days, and no inquiry is made of other counsel. Everything the DA said is just taken for truth. No inquiry is made whether anyone else objected. I'd like to save some time for rebuttal, if I may. You may. You have six minutes left for rebuttal, if you'd like to. Mr. Keller? Thank you, Your Honor. May it please the Court, California Deputy Attorney General Michael Keller on behalf of the Warden. Does the district court properly recognize the state courts in this case reasonably found that the trial court's refusal to grant a continuance so that a petitioner could retain an attorney of his choice did not violate a Sixth Amendment right to counsel of choice? Both the United States Supreme Court and this Court have both recognized that the right to retain counsel of choice is not absolute, that it may be outweighed by other competing interests. And so what was the competing interest here for six court days, maybe less, and a witness who was already being detained and presumably could have been put on sooner? So what are the interests? Well, specifically, some of the factors that this Court recognized in the Leavitt case is inconvenience to witnesses, court, counsel, and parties. And in this case – Well, did anybody show that there was inconvenience, other than the material witness? Was there any demonstration that anybody was going to be inconvenienced by the six court days or four court days? I gather the reason she's saying four court days is because there were actually two separate juries sworn in. That's correct, ma'am. So the hypothesis is that they could have done the other jury first, and so it was really four court days. Does that seem right? It could be. It could have been, yes. Okay. So has anybody demonstrated that those four court days mattered to anybody except the material witness? Well, we do know that one of the co-defendants, Perez, had twice refused to waive time and that continuances had been granted over his ejection. We also know that the prosecutor represented that the granting of this continuance would create witness availability issues, therefore the court could have been concerned that one continuance might lead to additional – Well, we don't have to speculate. The California Court of Appeals said what the reasons were, and I think we have to – as I understand it – look at whether their concerns were reasonable or unreasonable. What the court said on – I think it's ER 39 – that Perez was unwilling to waive time, Edward Rivas, a material witness, was being detained as a flight risk, the case was six months old, the trial had been continued several times because of discovery issues, and counsel had previously been told that the matter would be continued for the last time. Are all of those reasons worn out by the record? That is, are they factually correct? Yes, they are, ma'am. Okay, so that's – we can't look beyond those reasons, right? I mean, we can't make up reasons that the California Court didn't rely on. Well, that's correct. So is that – are those reasons enough, I guess, to paraphrase Judge Berzon's questions, to countervail his desire for new counsel and a really quite short delay? Absolutely. I mean, first of all, I would point out that any delay, when you're talking about the material witness who hasn't committed a crime, is significant when he's being kept in custody. And, of course, as was stated earlier, this is an AEDPA case, and we're dealing with a question involving trial court discretion. So we're starting with something that's a matter of discretion, and then we're looking at it through the lens of the AEDPA deference, so it's deference on top of discretion. So did Harris actually refuse to waive time, or he just – they never asked him, did they? With respect to prior incidents, yes, twice. On this instance, he wasn't specifically asked. And looking at – aside from – first of all, you have four attorneys that you're dealing with, numerous witnesses, the court, counsel, and parties, as has already been discussed, this material witness who's being held in custody. Aside from that, it's a question of whether or not – another factor that this court has previously looked at is whether other continuances have been granted, or whether it's – as the language was used in the Supreme Court's Unger case, whether the court engaged in a myopic insistence upon expeditiousness. This court didn't do that. In fact, there had been five prior continuances – But not due to this defendant. I think this defendant was responsible for, like, four days or something. This defendant had asked for the initial one from – it was going to be set possibly in March, and the court extended it to April at this defendant's – My impression was that he was responsible for a total of about four days, is that wrong? A total of four days? Something like that. Like, from end of May to beginning of June, or something like that. You're talking about the very last one that he was asking for. I'm saying at the very beginning. In other words, this matter had originally been set as early as January or February. And I believe the first time it had been continued to March, and then Petitioner's counsel asked that it be put into April, and the court agreed to that. So this court had granted five continuances. It said that this case needs to be tried. And what had happened, in fact, on one of the prior continuances, this court understood the significance and the importance of the right to counsel of choice, indeed, because one of Petitioner's co-defendants, Mr. Perez, requested counsel of choice, and the court granted it and gave a continuance. And then, interestingly, what happened once it came time for – and that was in – it was March 23rd, and the court granted good cause to continue the matter given this change of counsel. And then what happens on May 18th is a – one of the victims or witnesses was scheduled for a C-section, and so it had to be continued again. So one continuance led to another continuance led to another continuance. So in this case, you – first of all, you have the inconvenience factor. You also have the factor that a number of continuances had been granted. You also have the factor dealing with explanation for delay. The Petitioner in this case – this appeared many times. His co-defendant had requested counsel of choice, and yet he never spoke up and said he wanted to retain counsel of choice. How far in advance of the trial was the request made to begin with? I believe it was less than two weeks, which is quite different from the Bradley-Henry case that just came out recently, where it was, I believe, more in the neighborhood of six weeks and where it was not tied to a continuance request, whereas here the request was tied to it. And I would point out that Petitioner's counsel that he wanted to retain was the same attorney that had represented him at the preliminary hearing. So he was certainly aware of this person six months before he asked the court to let him substitute in. Was there any demonstration of irreconcilable conflict with the counsel that he had? No, Your Honor. He made no representation that he had any kind of conflict with the attorney that was assigned to him at the time or that he would – and that's yet another factor is the potential for prejudice, and there was no showing that he would be prejudiced by the I would also point out that this – the aspect of – Does the fact that this was a juvenile facing special circumstances murder have any bearing with regard to the importance of him having his own counsel that he's comfortable with? I don't believe it does, Your Honor. I'm not aware of any case law holding that the nature of the charges is something that should be evaluated in considering whether or not a person who's seeking the right to counsel of choice, whether that should – how that weighs in versus the court's – My overall reaction to this case is – Pardon me? My overall reaction to this case is it was – that I don't – that the trial court was poorly advised to do this. It would have been a lot wiser if he hadn't. You may make it through on an AEDPA standard, but I don't understand why a trial judge would do this for four days. Well I do believe, you know, you have the – you have a material witness that's been kept in custody. You also have – many – when you have four defendants – or three defendants, you have four attorneys. You have numerous prosecutor witnesses. Yeah, but the trial courts in the state courts of California operate that way. People are used to that. They are always being – they can show up for trial and not have a trial for days and weeks. So it's not as if the system operates with any efficiency and that this is unusual. But when you finally can have all the planets in alignment and you've got the thing ready to go, if you kick it once, it might get kicked again and again and again, because then this attorney's in trial and that's happening. And so – But isn't it just as likely that you'll be set for trial on a certain day and there won't be enough jurors or there won't be a courtroom or there won't be a judge and they tell you to come back in a week? Doesn't that happen all the time? That hasn't been my experience, but I'm sure that happens. But again, as Your Honor pointed out, we are looking at this not on direct review. We are looking at this through the AEDPA deference. And when we're talking about first a matter that is a matter of discretion – Are you a trial lawyer? I mean, did you do trials in California? I have done some, yes. So in short, given the deference that needs to be looked at for this matter of discretion, this court should affirm the district court judgment in this case. Thank you. Thank you, counsel. Ms. Marshall, you've reserved a long time for rebuttal, so have at it. It's a lot to rebut. First of all, just some minor points. The first continuance that was the only continuance that was ever granted for my client's benefit was the three-day continuance early on in the game. It's cited in the magistrate's report, actually. The case was continued once on petitioner's account from May 26 to June 1, when his appointed counsel was engaged in another trial. All the other continuances were either for the benefit of the government or other defendants. Perez might well have gone along with the continuance in this case, as may all the other attorneys. Perez particularly, since he was what the DA posited was the problem. Since my client had agreed once to a continuance for Perez, it's very likely that something could have been worked out that way. The witness that was in custody that they were so worried about had been in until June 26 on a probation violation. Also in California, the prosecution makes its own bed when they don't bring these witnesses in for the preliminary hearing. If they brought him in for the preliminary hearing, his testimony would have been on record and it could have been read in if he became unavailable. As it was, they chose not to do that. Well, that's not as satisfactory as having a live witness, is it? No, it's not. But I mean, as far as feeling sorry for him being in custody, I don't feel sorry for him being in custody. He obviously, there was some problem. He was not, you know, this upstanding citizen. He was a gangster who himself was in custody. Doesn't he have the same rights as any other gangster? I mean, you're here arguing for the rights of someone else who's been convicted of some pretty awful crimes, and yet you're saying this other person who may be similarly situated, we shouldn't allow the California court to consider his rights in making this discretionary call. Of course. But there are other ways. He could have been perhaps put on a non-recognizance bond or he could have been put into protective housing somewhere else. No inquiries. My point is that no inquiries were made. I guess I have the same issue that I'm hearing Judge Berzon's questions contain, which is if we were the trial court faced with this request for continuance, one or more of us may have made a different choice. But that's not the question that we're being asked on review. We're being asked whether the California court's unreasonably applied United States Supreme Court precedence in making a different decision. And that's a pretty high hurdle to get over. Not only that if we were doing it anew, we might do something different. That's kind of a so what in this game when you're under AEDPA. So I guess I have to understand more about why what the court did was unreasonable under Wheat. Because he had so many other options. Perhaps if he had made inquiries, I could be proven wrong. I wouldn't have the foundation I do. If he had made inquiries and all the other counsel had been opposed, he never even inquired if some other accommodations could be made for the witness that was in custody, if other witnesses would be unavailable. He made no inquiry whatsoever. And counsel originally came in 21 days before the trial date and asked to substitute him. But my client was a miss out that day, and that wasn't any fault of his. So the judge continued the motion until the 30th. So by then, we were looking at it being a little bit closer, like two weeks before. And that's when he asked for the, said he couldn't be ready on the exact date. But the July 15th date was only zero out of 10. And I have done my share of trials. Doesn't Bradley, or at least the concurring opinion in Bradley, essentially say that the court can condition new counsel on willingness to continue with the existing schedule, and that the reason for the result in Bradley was that he was willing to continue with the existing schedule? Is that not a bright line rule that comes out of the Bradley opinion? Well, no, I don't think so. I think the question, what comes out of the Bradley opinion is that the court can't base, I would say that the five days is unreasonable. The court's fear of further continuance was also a factor in this case, that if he granted this continuance, the other counsel then might not be ready. It might be continued further. I think that's what the underlying thing was, just as it was in Bradley. But if the court had inquired and determined that, yes, okay, the other counsel had cases trailing or something like that, then perhaps this issue wouldn't have been unreasonable. But he didn't do that, because he had absolutely no respect for the Sixth Amendment. Well, there is something else that concerned me about your comments, and I'm looking at ER 56 and 57, which is part of the denial of the motion. The government attorney says, it's my understanding from the sidebar that Mr. Perez, the co-defendant in this case, is unwilling to waive time, and then there's a lot more said. And there is substitute counsel for Perez, if you will. The lawyer for Solano stands up and says, I'm here for the limited purpose today of representing Perez, and it's okay with everybody, and so forth. But never contradicts that. He wouldn't know. I don't think he would be in a position to know if somebody is coming in naked in appearance like that. He says, I have spoken to Mr. Perez. I guess, again, one might have done more, but I just don't see how it was unreasonable for the court at that point, with that representation, and nobody getting up and saying, wait a minute, we don't have any idea what he thinks, or no, that's not his position. I just don't see why that's unreasonable. I'm not sure he was inquired and asked, you know, how do people feel about this? Can we work something out? Can we pick your jury first? He should have talked to the prosecutor. So why is this witness, are you going to put this witness on first? Can we get this witness on by July 26th? He didn't. And it just went on and on and on and on. And it ended up, the trial actually started on the day my client went to bed. And let's say that there was another possibility, which is that the lawyer's problem was he had a vacation. He could have canceled it. But it isn't my client's problem. Actually, he had the vacation originally, but then this was a calendar conflict. The vacation was why he couldn't, he didn't get back probably until two weeks later to hear the motion. Oh, really? I thought it was, I'm sorry, I misunderstood that. I thought that was it. But then it was a calendar conflict. I would just ask the court that no judge would do this. It was arbitrary. It was capricious. It wasn't well-reasoned. It was just a total disrespect for the constitutional rights of my client. Thank you very much. Thank you, counsel. We appreciate very much the arguments of both counsel. And the case just argued is submitted. I believe we'll hear one more before our morning break. So if counsel for Elizondo v. Department of the Navy are here, they can come forward.
judges: Hall, Graber, Berzon